**Kay Coles JAMES, Director, Office of Personnel Management, Petitioner,**

v.

**Tim DALE, Respondent.**

**No. 03–3030.**

United States Court of Appeals, Federal Circuit.

Jan. 26, 2004.

Todd M. Hughes, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for petitioner. With him on the brief was David M. Cohen, Director. Of counsel on the brief were Mark A. Robbins, General Counsel; Kathie Ann Whipple, Deputy General Counsel; Steven E. Abow and Becky Kumar, Attorneys, Office of General Counsel, Office of Personnel Management, of Washington, DC.

Judith D. Galat, Attorney, American Federation of Government Employees, AFL–CIO, of Washington, DC, argued for respondent. With her on the brief was Mark D. Roth.

Before MAYER, Chief Judge,
NEWMAN and LINN, Circuit Judges.

Opinion for the court filed by MAYER, Chief Judge. Dissenting opinion filed by PAULINE NEWMAN, Circuit Judge.

MAYER, Chief Judge.

The Office of Personnel Management ("OPM") challenges the final decision of an arbitrator reversing the removal by the United States Immigration and Naturalization Service ("agency") of Tim Dale from his position as a border patrol agent. *Immigration and Naturalization Serv. v. Dale*, FMCS No. 01–0502 (Oct. 5, 2001, and Feb. 18, 2002) (Goodstein, Arb.). Because the arbitrator abused his discretion by substituting his own charge for that of the agency and applied the wrong standard to determine whether Dale's associate was a "suspected narcotics law violator," we reverse.

*Background*

Dale was a border patrol agent in Del Rio, Texas, from July 27, 1997, until his removal from service on March 9, 2001. The agency removed Dale for "associating with a known or suspected law violator" in violation of the Border Patrol Handbook. At the time he lived with his wife, sister-

in-law, and his two minor children. Around January of 2000, Dale allowed a young woman, Natalie Rohr, to move into his home. Rohr had left her mother's home after an apparent falling out. Soon after Rohr moved, the mother reported to the police that she had found a straw in Rohr's purse that appeared to be used for ingesting cocaine. The straw tested positive for cocaine, and Rohr was arrested for felony cocaine possession. Rohr claimed that she was innocent, that the straw was not hers, and that she had not used cocaine; she alleged her mother was upset and attempting to frame her. Nevertheless, she was indicted by a grand jury and later arrested again on the same charge.

After both arrests Dale posted bond for Rohr. He first used his own money but, after the second arrest, used money sent to him by Rohr's father. Rohr returned to Dale's home each time after being released. Ultimately, the cocaine charges against her were dismissed after she complied with the terms of a deferred adjudication agreement. So, although indicted for felony cocaine possession, she was never convicted.

The Border Patrol Handbook bars agents from fraternizing with known or suspected law violators. The Handbook states:

> While law violators and other disreputable persons are sometimes ingratiating and have engaging personalities, these qualities do not justify associating with them. Even the appearance of being social with such persons must be avoided.
>
> Fraternization with known or suspected law violators is prohibited unless a patrol agent's supervisor has issued instructions to obtain information from such individuals. Even then the supervisor must be kept closely informed. In short, patrol agents should avoid all associations or places that may degrade

them or their positions in the eyes of the public.

The primary purpose of this policy is to maintain sound public perception and confidence in light of the authority vested in both the Border Patrol as a whole and individual field agents. Similarly, the Officer's Handbook issued to Dale provides that "[c]onsorting with or being habitually seen in the company of questionable characters is considered improper conduct for officers of this Service."

On appeal, the arbitrator concluded, among other things, that Dale reasonably believed that the woman was not guilty of cocaine use and, because she had not been convicted, the charge of associating with a known or suspected narcotics violator could not stand.

### Discussion

Jurisdiction in this case stems from an order in which we determined "that the arbitrator's decision 'will have a substantial impact on a civil service law, rule, regulation, or policy directive.'" *James v. Dale,* 51 Fed.Appx. 1 (Fed.Cir. Oct.2, 2002) (citing 5 U.S.C. § 7703(d)). We therefore exercised our discretion under section 7703(d) and granted OPM's petition for review. In this court, the arbitrator's decision is treated equivalently to a decision of the Merit Systems Protection Board. 5 U.S.C. § 7121(f) (2000) ("[J]udicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the Board."); *Brook v. Corrado,* 999 F.2d 523, 526 (Fed.Cir.1993). We must affirm any board decision not found to be: (1) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedure required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c)

(2000); *Hayes v. Dep't of Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984).

■ An agency may remove an employee "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (2000); *Dep't of the Navy v. Egan,* 484 U.S. 518, 522, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). An employee's discharge is to be sustained by the board if "supported by a preponderance of the evidence." 5 U.S.C. § 7701(c)(1)(B) (2000). "[A]n agency must establish three things to withstand challenge to an adverse action against an employee." *Pope v. United States Postal Serv.,* 114 F.3d 1144, 1147 (Fed.Cir.1997). It must prove by a preponderance of the evidence that the charged misconduct occurred; and it must show a relationship between the misconduct and the objective of promoting the efficiency of the service. *Id.* We have classified the latter requirement as the burden of the agency to establish a nexus between the misconduct and the efficiency of the service. *Brown v. Dep't of Navy,* 229 F.3d 1356, 1358 (Fed.Cir.2000); *Hayes,* 727 F.2d at 1539. Finally, after a nexus is shown, the agency may exercise its discretion and impose a reasonable penalty for the misconduct. *Lachance v. Devall,* 178 F.3d 1246, 1251 (Fed.Cir.1999). The reasonableness of the penalty is not at issue in this appeal.

The agency had to prove that Rohr was a known or suspected law violator and that Dale associated with her. It is obvious, and Dale does not challenge, that he associated with Rohr by allowing her to reside in his home for an extended period. He was also aware of the charges against her because he bailed her out of jail after each arrest. The question is whether the agency has proven by a preponderance of the evidence that Rohr was a "suspected law violator" based upon the grand jury indictment and other evidence of record. The arbitrator did not believe so and gave con-

siderable weight to Dale's subjective belief that Rohr was not guilty of the charged crimes. The arbitrator concluded in his initial decision that "[w]hether [the charge against Rohr] was true or not, they believed her at that time. Therefore, they were not associating with a person suspected by them as a narcotics law violator."

OPM questioned whether the arbitrator employed an erroneous standard of proof by relying upon Dale's subjective belief in Rohr's innocence. OPM further asserted that the arbitrator improperly substituted his own charge for the agency's by relying upon the lack of a conviction. The arbitrator responded in his denial of OPM's request for reconsideration by clarifying that he had not applied a subjective standard and framed the issue as whether "the grievant, or any reasonable person, knew or should have known that Ms. Natalie Rohr was a known or suspected narcotics law violator." Further, the arbitrator concluded that a reasonable person could have believed that Rohr was not a suspected narcotics law violator because Rohr's mother was vindictive and wanted to get her daughter into trouble. The arbitrator again placed considerable weight on the fact that Rohr was never convicted, observing that "under the Constitution and the laws of the U.S., Rohr was innocent until proven guilty."

■ We agree with OPM that the arbitrator abused his discretion when he substituted his own charge for the agency's—by injecting the requirement of a conviction. *See O'Keefe v. United States Postal Serv.,* 318 F.3d 1310, 1315 (Fed.Cir.2002) (holding that the board abused its discretion by substituting its own grounds for dismissal for those properly asserted by the agency). An arbitrator's "review of the agency's decision is likewise limited solely to the grounds invoked by the agen-

cy." *Id.* Throughout his analysis, the arbitrator stressed that Rohr was innocent until proven guilty and that the agency's charge was unsustainable because Rohr was not convicted. For example, the arbitrator reasoned: "I have never understood a true bill by a grand jury to mean that the evidence supported a conviction of the person charged," and later, "[h]ad there even been a conviction of Rohr when her case came to trial, the agency would have had something objective to argue." While the later dismissal of Rohr's criminal charges under the plea agreement is relevant, the agency's charge was only that Rohr was a known or *suspected* narcotics law violator. Therefore, the agency had only to prove by a preponderance of the evidence that Rohr was a suspected narcotics law violator to meet the first requirement for punishment. A conviction is not required.

■ The arbitrator also used an incorrect legal standard to determine if Rohr was a suspected narcotics law violator. The correct standard must be objectively based and may not be superceded by an employee's subjective beliefs. In our view, the proper test is: would a disinterested observer with knowledge of the essential facts known to or readily ascertainable by the employee reasonably conclude that the associate of the employee was a suspected law violator? *Cf. Lachance v. White,* 174 F.3d 1378, 1381 (Fed.Cir.1999) (adopting a similar test for determining whether an employee had a reasonable belief that he uncovered gross mismanagement, thereby protecting his disclosures under the Whistleblower Protection Act). It is apparent the arbitrator relied heavily on Dale's subjective belief in Rohr's innocence and did not view the situation from the viewpoint of a disinterested observer.

"[A]n indictment, fair upon its face, and returned by a properly constituted grand jury, conclusively determines the existence of probable cause," *Gerstein v. Pugh,* 420 U.S. 103, 117 n. 19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (citations omitted), which is a reasonable ground "to believe that a crime has been committed." *Branzburg v. Hayes,* 408 U.S. 665, 686, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Rohr's grand jury indictment, not to mention her arrests for felony cocaine possession and the physical evidence, would lead a disinterested observer to but one conclusion that Rohr was a "suspected narcotics law violator." The charged misconduct was proven by the agency.

■ Determining that the misconduct occurred is the first step; the agency still must prove that disciplining an employee for associating with a suspected narcotics law violator is "for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (2000). An adverse action promotes the efficiency of the service when "the employee's misconduct is likely to have an adverse impact on the agency's performance of its functions." *Brown,* 229 F.3d at 1358. "The Board routinely evaluates such factors as loyalty, trustworthiness, and judgment in determining whether an employee's discharge will promote the efficiency of the service." *Egan,* 484 U.S. at 537 n. 1, 108 S.Ct. 818 (White, J., dissenting). "Absent a mistake of law by the Board in selecting the proper test for analyzing the nexus requirement ... we must uphold the Board's nexus finding if it is supported by substantial evidence." *Brown,* 229 F.3d at 1358–59. Here, the arbitrator offered no test and failed to examine the nexus requirement. He concluded, without support, "that the grievant's removal from service fails to promote the efficiency of the service."

The Border Patrol is trusted to protect our nation's borders from, among other things, the influx of illegal drugs. Associations between border patrol agents and

suspected criminals, especially those suspected of felony drug offenses, undermine the public's confidence in the agency's ability to fulfill its mission. Agencies that discipline employees for off-duty misconduct, particularly associational, must pay particular attention to the nexus requirement. *See, e.g., Gloster v. Gen. Servs. Admin.*, 720 F.2d 700, 703 (D.C.Cir.1983) ("The nexus requirement is particularly strict in cases involving non-work-related misconduct."). They need to balance their policy objectives against the imposition of strict codes of conduct that permit governmental intrusions into the private activities of federal employees. But the nexus between the misconduct of Dale, an agent of the Border Patrol, and the efficiency of the Border Patrol is readily apparent; indeed it was spelled out in the Border Patrol Handbook.

### Conclusion

Accordingly, the decision of the arbitrator is reversed.

*REVERSED.*

PAULINE NEWMAN, Circuit Judge, dissenting.

The issues on this appeal turn on the arbitrator's evaluation of the credibility, weight, and probative value of the evidence, upon hearing and observation of live witnesses, and tempered with the discretion and deferential review of the arbitration protocol. It is not for this court to substitute our own findings and preferences, when those of the arbitrator are supported by substantial evidence. *See, e.g., Brook v. Corrado*, 999 F.2d 523, 526 (Fed.Cir.1993) ("[T]his court may overturn the arbitrator's ruling only if it is arbitrary, capricious, abusive of discretion, illegal, procedurally deficient, or unsupported by substantial evidence. 5 U.S.C. § 7703(c)").

The arbitrator, upon hearing, consideration, and reconsideration, concluded that Mr. Dale should not have been removed from employment for "fraternizing with a known or suspected law violator," when Mr. Dale chose not to evict from his family home an eighteen-year old girl who was a friend of Mrs. Dale's sister (who also lived with the Dale family). The girl had left her mother's home after an argument, and had been taken into the Dale home. The arbitrator held that Mr. Dale could have reasonably believed the girl to be innocent of the cocaine charge of which her mother accused her. The arbitrator heard the undisputed testimony—including that of the girl's divorced father—that the mother was quite capable of "framing" her daughter by telling the police that she found a cocaine-dipped straw in the girl's purse.

These complex relationships were described by the witnesses, whose testimony and the arbitrator's conclusions raised considerations of credibility and weight and judgment. It is not for this court to reweigh the evidence or to reject an arbitrator's findings for which there was evidentiary support. The arbitrator first applied the standard of the employee's reasonable belief, *see Horton v. Department of the Navy*, 66 F.3d 279, 283 (Fed.Cir.1995) (reviewing the evidence "from the viewpoint of [the employee's] reasonable belief"), and on reconsideration the arbitrator further applied an objective standard, finding that a reasonable person could conclude that "there was insufficient evidence to suspect Miss Rohr of being a narcotics law violator." *See Lachance v. White*, 174 F.3d 1378, 1381 (Fed.Cir.1999) (finding what "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee" would have believed). The court appears to have missed that the arbitrator, at OPM's behest, applied an objective standard to the found facts. Indeed, an arbitrator has greater flexibility than other administra-

tive decisionmakers in evaluating close questions and seeking fair resolution on the particular facts of the case.

My colleagues find their own facts and reach their own conclusions, and rule that after the girl was indicted on the mother's information,[1] Mr. Dale was obliged to evict her from the family home on pain of loss of his job, whether or not he believed in her innocence. However, deference is due to the arbitrator's weighing of the evidence in the circumstances. The question is whether a reasonable arbitrator could have concluded that loss of Mr. Dale's job was not warranted in response to his action in not throwing this girl out. *See Rogers v. Department of Defense Dependents Schools,* 814 F.2d 1549, 1552 (Fed.Cir.1987) ("[T]he arbitrator's award must be sustained unless it is found to be: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedure required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.")

When these criteria are applied to the fact-driven, credibility-laden and indeed humanitarian issues presented, the arbitrator's decision must be affirmed. From the court's contrary ruling, I respectfully dissent.

---

1. Although the majority opinion refers to "two arrests," there was only one event, the asserted cocaine-dipped straw that the mother said she found.