NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3280

DEBORAH A. PEPO,

Petitioner,

v.

DEPARTMENT OF THE TREASURY,

Respondent.

_____

DECIDED: April 7, 2006

_____

Before SCHALL, DYK, and PROST, <u>Circuit Judges</u>.

PER CURIAM.

## DECISION

Deborah A. Pepo petitions for review of the final decision of the Merit Systems Protection Board ("Board") that affirmed the employing agency's decision to remove Ms. Pepo from her position. <u>Pepo v. Dep't of the Treasury</u>, No. SF0752030534-I-1 (M.S.P.B. May 18, 2005) ("<u>Final Decision</u>"). We <u>affirm</u>.

DISCUSSION

I.

Ms. Pepo filed an appeal with the Board alleging that her employing agency, the Internal Revenue Service ("agency"), improperly removed her from her position as a Supervisory Revenue Officer, GS-13.

Effective June 20, 2003, the agency removed Ms. Pepo from her position based on the following charges: (1) failing to conscientiously perform the duties of her official position when she released 11 liens that had not been paid in full; and (2) responding with a lack of candor in a matter of official interest. See Pepo v. Dep't of the Treasury, No. SF0752030534-I-1, slip op. at 6-7 (M.S.P.B. December 12, 2003) ("Initial Decision").

In an initial decision dated December 12, 2003, the administrative judge ("AJ") to whom the case was assigned affirmed the agency's decision. Id. The AJ found that the agency proved by a preponderance of the evidence that Ms. Pepo had failed to conscientiously perform the duties of her official position when she released 11 liens that had not been paid in full. Id., slip op. at 7-9. The AJ noted that while Ms. Pepo claimed that she was shown documents by the taxpayers at issue demonstrating that the taxpayers had satisfied some or all of the obligations, she did not retain the documents and could not describe them. Id. In any event, the AJ determined, it would have been inappropriate for Ms. Pepo to rely solely on documents provided by taxpayers without comparing them to the agency's own records. Id., slip op. at 7-8. The AJ also found that while Ms. Pepo claimed she had her secretary query the agency's Integrated Data Retrieval System to determine whether taxes were still owed

and the results demonstrated that only two obligations were outstanding, there were unexplained variances with respect to the dates at issue. Id. In addition, the AJ noted that "multiple witnesses" testified that this method was not an appropriate way to research a taxpayer's account prior to releasing a lien because it does not reflect obligations that have been deemed uncollectible at some point in the past, but may be collectible at present. Id. Further, the AJ observed that Group Managers are forbidden to sign lien releases based on the mere absence of information. Id., slip op. at 8. Rather, they must determine what happened to the tax liabilities before a lien is released. Id. The AJ concluded: "[E]ven taking [Ms. Pepo's] account at face value, various witnesses concluded that the steps she took to research these liens were wholly inadequate." Id.

The AJ next found that the agency had proven by a preponderance of the evidence that Ms. Pepo had exhibited a lack of candor based on four statements she made relating to the release. In an August 20, 1998 interview, Ms. Pepo allegedly told Tax Administration Special Agents William Schafer and Rod Ammari (1) that she "could not remember specific details" about some transactions and that "there were either duplicate assessments or a mix-up with taxpayer identification numbers;" (2) that she "believed that a Revenue Officer in her group had met with [the Taxpayer] and/or his representative(s) on the day [she] signed the releases;" (3) that she "did not meet with Taxpayer A or his representative(s) who came into the office concerning the lien releases on February 27, 1998." Id., slip op. at 9-10. In a September 16, 1999, re-interview by Agent Schafer and another agent, however, she "denied making the statement that [she] never met with [the Taxpayer] or his representative(s)" during the

prior interview. Id., slip op. at 10. The AJ found that Ms. Pepo's having made the statements was supported by an investigative memorandum prepared by Agent Schafer and the agents' testimony about the interviews. Id. The AJ also noted that Ms. Pepo's own testimony supported the agency's assertion that she made the statements. Id., slip op. at 11. The AJ made a credibility determination and found that Ms. Pepo responded with a lack of candor in a matter of official interest when she said (1) that she "could not remember specific details" about some transactions and that "there were either duplicate assessments or a mix-up with taxpayer identification numbers;" (2) that she "believed that a Revenue Officer in her group had met with [the Taxpayer] and/or his representative(s) on the day [she] signed the releases;" and (3) that she "did not meet with Taxpayer A or his representative(s) who came into the office concerning the lien releases on February 27, 1998." Id., slip op. at 11-16. The AJ also found that Ms. Pepo responded with a lack of candor when she "denied making the statement that [she] never met with [the Taxpayer] or his representative(s)" during the prior interview. Id.

The AJ concluded that the agency properly considered the relevant factors listed in Douglas v. Veterans Administration, 5 M.S.P.R. 280, 306 (1981), in determining a penalty, and that the penalty of removal did not exceed the tolerable bounds of reasonableness for Ms. Pepo's behavior. Id., slip op. at 15-17. The AJ explained that Ms. Pepo's behavior had serious consequences, that Ms. Pepo was in a position that required honesty, and that she was not remorseful. Id., slip op. at 16.

The AJ's initial decision became the final decision of the Board when the Board denied Ms. Pepo's petition for review for failure to meet the criteria for review set forth at

5 C.F.R. § 1201.115(d). Final Decision. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2000).

II.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1361 (Fed. Cir. 1998).

An agency may remove an employee "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (2000); see also James v. Dale, 355 F.3d 1375, 1378 (Fed. Cir. 2004). An agency must establish the following three things to withstand challenge to an adverse action against an employee: (1) the charged misconduct occurred; (2) a nexus between the misconduct and the objective of promoting the efficiency of the service; and (3) the penalty imposed was reasonable. James, 355 F.3d at 1378.

On appeal, Ms. Pepo argues the following: (1) the Board failed to consider the record in the case, which demonstrates that the liens filed against the taxpayers were in "multiplicity;"[1] (2) the Board and the agency misconstrued her truthful statements; (3) the agency failed to demonstrate that her removal was to improve efficiency; (4) the investigation was tainted because it was a predisposed investigation and it should have,

_____

[1] With this argument, Ms. Pepo is asserting that the liens against the taxpayers were duplicated and filed in two different counties. She also asserts that the liens were ambiguous and filed on property that did not exist.

instead, been a joint investigation into the taxpayer's truthfulness; and (5) she was prejudiced by the delay of forty-two months between the date of her alleged offenses and her removal.

We see no error in the Board's decision. The Board's finding that Ms. Pepo failed to conscientiously perform the duties of her official position when she released 11 liens that had not been paid in full is supported by substantial evidence. The AJ relied on the testimony of several witnesses who explained that Ms. Pepo's behavior in releasing the liens and her explanation for doing so was not reasonable or acceptable in the agency.

The Board's finding that Ms. Pepo responded with a lack of candor in a matter of official interest also is supported by substantial evidence. The Board assessed the credibility of Ms. Pepo and the agents who interviewed her and determined that the agents, who claimed Ms. Pepo made false statements to them, was more credible than Ms. Pepo, who claims she did not. As this court has recognized, the Board's "[d]eterminations of witness credibility are 'virtually unreviewable.'" Blank v. Dep't of the Army, 247 F.3d 1225, 1228 (Fed. Cir. 2001) (quoting Hambsch v. Dep't of the Treasury, 796 F.2d 430, 436 (Fed. Cir. 1986)).

Finally, the agency properly considered the pertinent Douglas factors, and the penalty of removal is reasonable. The charged misconduct occurred, there was a nexus between the misconduct and the objective of promoting the efficiency of the service, and the penalty of removal was appropriate based on Ms. Pepo's actions.[2]

---

[2] There is no evidence supporting Ms. Pepo's argument that the investigation was tainted, as the alleged offenses she is charged with actually occurred,

For the foregoing reasons, the Board did not err in affirming the agency's decision. The Board's decision is therefore affirmed.

Each party shall bear its own costs.

---

(Cont'd. . . .)
and there is no evidence that the time between her alleged offenses and her removal prejudiced her.