NOTE:   This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3139

CYNTHIA M. HUDSON,

Petitioner,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent.

Cynthia M. Hudson, of Seminole, Oklahoma, pro se.

Lauren S. Moore, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With her on the brief were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and  Franklin E. White, Jr., Assistant Director.

Appealed from:  United States Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3139

CYNTHIA M. HUDSON,

Petitioner,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent.

_____

DECIDED: July 12, 2007

_____

Before MICHEL, Chief Judge, LOURIE, Circuit Judge, and ROBERTSON, District Judge.[*]

MICHEL, Chief Judge.

Cynthia M. Hudson petitions for review of the decision of the Merit Systems Protection Board ("Board") upholding the Department of Health and Human Services' ("HHS") decision to remove her from employment as a nurse at a Native American health center. Hudson v. Dep't of Health and Human Servs., DA-0752-06-0417-I-1 (M.S.P.B. Sept. 1, 2006) ("Initial Decision"). The initial decision became final when review was denied on January 18, 2007. We find no error in the Board's decision because ample evidence supported its findings as to all four charges of rude and

_____

[*] Honorable James Robertson, District Judge, United States District Court for the District of Columbia, sitting by designation.

disrespectful conduct toward supervisors, the seriousness of the misconduct together with a prior suspension for similar misconduct made removal reasonable, and Hudson's affirmative defenses were correctly found not proven. Therefore, we <u>affirm</u>.

## I. BACKGROUND

Hudson was employed by HHS as a Licensed Practical Nurse at the Wewoka Indian Health Center ("Center") in Wewoka, Okalahoma. After being suspended on May 23, 2005, and receiving counseling for similar improper conduct, Hudson continued to engage in rude behavior towards supervisors. On or about February 17, 2006, Hudson berated her immediate supervisor, Michelle Jesse, R.N., questioned Jesse's productivity by telling her that she wasn't doing anything and stated, "Don't you ever bring me a memo at 4:00 p.m." <u>Initial Decision</u> at 4. Several days later, on or about February 23, 2006, Hudson again spoke disrespectfully to Jesse when she angrily questioned Jesse about a meeting and demanded an explanation regarding why she was not informed about the meeting. Velma Coker, an employee at the Center, testified that she overheard the loud tone of Hudson's voice and thought she might have to call security. <u>Id.</u>

On February 24, 2006, Hudson again became belligerent and threatening towards Jesse in a meeting, telling her "I will take care of you . . . ," and "I know people like you, and I am fully aware of an RN's role and what you are capable of and I will rare [sic] my head." <u>Id.</u> at 9. Susan Denthman, another employee at the Center, testified that she overheard Hudson's statements to Jesse, including, "I will take care of you" and "I know people like you." She also testified that Jesse responded by asking Hudson to "calm down." <u>Id.</u> at 10.

Later that day, Hudson was called to meet with Jesse, Cynthia Galbreath (her second-level supervisor), and Ferrel Smith (acting CEO) in the CEO's office, where she received notice of a proposed 14-day suspension without pay based on two specifications of rude and disrespectful conduct towards Jesse. At the meeting, Hudson once again became loud, belligerent, and disrespectful towards Jesse. After Smith told Hudson to stop, Hudson left the room. Approximately five minutes later, Hudson barged back into Smith's office, interrupted a meeting among Jesse, Galbreath, and Smith, and made further rude comments, this time about all of them. At that point, Jesse changed her recommendation from suspension to removal. A letter of proposed removal was sent to Hudson on March 13, 2006. Memorandum from Michelle Jesse, First-Level Supervisor, to Cynthia Hudson (Mar. 13, 2006). On April 14, 2006, Galbreath directed Hudson's removal for improper conduct based on four[1] specifications of rude and disrespectful behavior towards supervisors. Letter from Cynthia Galbreath, Deciding Official, to Cynthia Hudson (Apr. 14, 2006).

Hudson appealed HHS' decision to the Board on May 3, 2006. After holding a hearing, the Administrative Judge ("AJ") found that HHS had proven each of the four specifications by preponderant evidence. Hudson raised as affirmative defenses allegations that the removal was (1) a result of racial discrimination, (2) a reprisal for filing an Equal Employment Opportunity ("EEO") complaint, and (3) retaliation for whistleblowing. The AJ found that Hudson had not established any of these affirmative defenses by preponderant evidence and also that removal was reasonable in light of the circumstances. Initial Decision at 15-19. The initial decision of the AJ became final

---

[1] The removal letter included the two additional instances of rude conduct that occurred on February 24, 2006.

when the full Board denied review on January 18, 2007. <u>Hudson v. Dep't of Health and Human Servs.</u>, DA-0752-06-0417-I-1 (M.S.P.B. Jan. 18, 2007). This timely appeal followed.

## II. DISCUSSION

We have jurisdiction over final decisions of the Board pursuant to 5 U.S.C. § 1295(a)(9). Given the issues in this case, we must affirm the decision of the Board, unless we find it is not in accordance with the law or is unsupported by substantial evidence. 5 U.S.C § 7703(c); <u>see also</u> <u>Munson v. Merit Sys. Prot. Bd.</u>, 318 F.3d 1358, 1360 (Fed. Cir. 2003).

## A. Proof of Misconduct

On appeal Hudson argues that key facts were ignored that would have changed the AJ's finding that HHS proved its specifications. Specifically, Hudson alleges that that she was subjected to "harassment" and "unprofessional behavior" by her supervisors. Hudson apparently believes that the alleged misconduct by her supervisors gave her the right to respond "in [a] like manner." Appellant Br. at 2. Contrary to Hudson's assertions here, the AJ did address her allegations of harassment and correctly determined that, even assuming the claims were true, they did not excuse her improper conduct.

Relying on the <u>Hillen</u> factors,[2] the AJ found Hudson's testimony to be less credible than that of her supervisors and other corroborating HHS witnesses who overheard Hudson's rude comments. We must accord the AJ's credibility determinations deference, especially where, as here, they are heavily demeanor-based. <u>See</u> <u>Griessenauer v. Dep't of Energy</u>, 754 F.2d 361, 364 (Fed. Cir. 1985). We conclude that there is substantial evidence to support the AJ's findings that, as charged, Hudson repeatedly engaged in rude and disrespectful conduct toward supervisors.

Hudson also argues that the Board did not consider evidence of (1) a Code Yellow in 2005, (2) the departure of some nurses after Hudson's dismissal, and (3) the short length of time Hudson interacted with Jesse. However, Hudson did not raise these arguments before the Board. As such, she has waived them. <u>See</u> <u>Henry v. Dep't of the Navy</u>, 902 F.2d 949, 953 (Fed. Cir. 1990).

## B. Reasonableness of Removal

Hudson also challenges the AJ's finding that removal is reasonable. Removal is only permissible if it promotes the efficiency of the service, is reasonable, and is not totally unwarranted in light of all the circumstances. <u>See, e.g.</u>, <u>Brown v. Dep't of the Navy</u>, 229 F.3d 1356, 1358, 1364 (Fed. Cir. 2000). Substantial evidence supports the AJ's finding that HHS demonstrated a "relationship between the misconduct and the objective of promoting the efficiency of the service" and that the four recent and serious

---

[2]   <u>Hillen v. Dep't of the Army</u>, 35 M.S.P.R. 453, 458 (M.S.P.B. 1987) (setting forth the following factors for resolving credibility issues: "(1) The witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor.").

charges of disrespectful conduct as well as Hudson's prior 5-day suspension for similar misconduct made removal within the range of reasonable actions. See James v. Dale, 355 F.3d 1375, 1378 (Fed. Cir. 2004).

## C. Failure of Proof of Affirmative Defenses

Hudson contends that the Board did not properly consider her whistleblowing activities.[3] This argument has no merit. The AJ assumed without deciding that Hudson's reports of the misuse of government vehicles were protected disclosures but found that HHS had proven by clear and convincing evidence that it would have removed her anyway. See Briley v. Nat'l Archives & Records Admin., 236 F.3d 1373, 1377 (Fed. Cir. 2001) (requiring the agency to show "by clear and convincing evidence that it would have taken the same personnel actions in the absence of any protected disclosures" before sustaining the personnel action). Substantial evidence supports the AJ's finding that Hudson did not establish her whistleblowing defense.

Hudson also argues that her termination was retaliation for her filing of an EEO complaint. However, the AJ made no error in finding that Hudson did not establish that HHS' action was in fact a reprisal taken for filing an EEO complaint. The EEO complaint was filed against Denthman and not Jesse or Galbreath, the officials who recommended and directed her removal, respectively, and was filed almost one year before her removal. Thus, while Hudson did engage in such EEO activity, the AJ correctly balanced Hudson's misconduct against the HHS' lack of motivation to retaliate and found an insufficient nexus between the EEO activity and the personnel action a year later to establish the defense. See Webster v. Dep't of the Army, 911 F.2d 679,

---

[3] Hudson does not appeal the Board's findings with respect to her racial discrimination affirmative defense.

689 (Fed. Cir. 1990) (requiring a "genuine nexus" between the protected activity and the personnel action in order to establish an affirmative defense). Substantial evidence supports that finding.

## III.    CONCLUSION

We have carefully considered all of Hudson's other arguments and conclude that they are either wholly unpersuasive or their review is unnecessary for the disposition of this appeal. Therefore, we do not discuss them. Accordingly, discerning no basis for disturbing the Board's decision which is free of legal error and supported by substantial evidence, we affirm.