NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARIO G. MANCINI, JR.,**

*Petitioner,*

v.

**DEPARTMENT OF VETERANS AFFAIRS,**

*Respondent.*

---

2010-3006

---

Petition for review of the Merit Systems Protection Board in CH0752090272-I-1.

---

Decided: July 21, 2010

---

KENNETH J. HEISELE, Weprin, Folkerth & Routh, LLC of Dayton, Ohio, for petitioner.

JOSHUA E. KURLAND, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director.

———————————

Before DYK, FRIEDMAN, and MOORE, *Circuit Judges*.

PER CURIAM.

Mario G. Mancini, Jr., ("Mancini") petitions for review of a final order of the Merit Systems Protection Board (the "MSPB" or "Board") affirming a decision of the Department of Veterans Affairs (the "VA" or "agency"). The VA removed Mancini for "Inappropriate Conduct," "Neglect of Duty," "Using Government Computer to Transmit Inappropriate Materials," and "Providing Inconsistent Statements Under Oath." *See Mancini v. Dep't of Veterans Affairs*, No. CH-0752-09-0272-I-1 (M.S.P.B. Aug. 6, 2009) ("*Final Order*"). We *affirm*.

## I BACKGROUND

Mancini was employed as a vocational rehabilitation specialist at the Dayton Veterans Affairs Medical Center ("Dayton VA") from 1992 until January 2, 2009. The four charges for which Mancini was removed from this position relate to multiple, distinct events that occurred over a short period of time.

*Neglect of Duty*

### A. Failure to Transfer

During Fall 2007 and early 2008, Mancini served as a counselor to a female veteran (the "Veteran") with diminished mental capacity who was receiving treatment at the Dayton VA. On October 18, 2007, Mancini concluded that he believed it was in the Veteran's best interests for her to be transferred to the care of a female vocational reha-

bilitation specialist, Debbie Oberg ("Oberg"). Mancini took steps to transfer the Veteran to Oberg, but the transfer was never completed, and the Veteran stayed under Mancini's care. The parties dispute whether it was Mancini's or Oberg's fault that the transfer was not completed. Mancini's failure to complete the transfer of the Veteran to Oberg after he had determined that such a transfer was necessary became the basis for one of the two specifications supporting a Neglect of Duty charge.

## B. Improper Supervision of Intern

On October 19, 2007, Mancini recorded in a progress note that the Veteran was "very manipulative and is becoming increasingly seductive to male staff" and that Mancini "now believes this veteran is extremely problematic in her judgment, insight, physical limitations, relationships with men." J.A. 884. He further noted that the Veteran had asked Mancini's student intern (the "Intern") to drive her to Florida, which the Intern had declined to do. The Intern had also told Mancini that a "friendship" had started developing between the Intern and the Veteran. J.A. 175, 177. Mancini testified that he cautioned the Intern both that driving the Veteran to Florida and that developing a friendship with the Veteran would be inappropriate. Later, the Intern disclosed to Mancini that the Veteran had called the Intern from Florida. The Intern took a break from his internship the following academic quarter. On February 29, 2008, the Veteran disclosed to Mancini that she had become involved in a consensual, sexual relationship with the Intern during his break from the internship. Mancini's allegedly improper supervision of the Intern formed a second basis for the Neglect of Duty charge against Mancini.

*Providing Inconsistent Statements Under Oath*

Mancini appeared before the First Administrative Board of Investigation to provide sworn testimony relating to the relationship between the Intern and the Veteran on March 21, 2008, and April 11, 2008. An alleged inconsistency between Mancini's testimonies on these two dates formed the basis for the charge of Providing Inconsistent Statements Under Oath.

*Inappropriate Conduct*

A. Provision of Daughter's Contact Information

In February 2008, the Veteran expressed an interest in motorcycles to Mancini. Mancini provided the Veteran with the contact information for his daughter, Candace Pickrel ("Pickrel"), who was knowledgeable about motorcycles. Like Mancini, Pickrel was trained to provide rehabilitation services, but she was unaffiliated with the Dayton VA.

On March 25 or 26, 2008, which was four or five days after Mancini first appeared before the Board of Investigation, the Veteran was allegedly raped by another patient ("Mr. K"), who was being treated for sexual addiction at the Dayton VA. Pickrel subsequently became an advocate for the Veteran with regard primarily to the alleged rape, as well as to the Veteran's treatment and personal relationships at the Dayton VA.

The Code of Professional Ethics for Rehabilitation Counselors (the "CPERC") discourages the development of familial relationships with clients "that could impair professional judgment or increase the risk of harm to clients." J.A. 397. Mancini's provision of his daughter's telephone number to the Veteran in February 2008 alleg-

edly violated the CPERC and provided the basis for the first of two specifications supporting the charge of Inappropriate Conduct against Mancini. In this specification, the agency "noted that Ms. Pickrel became the patient's advocate in matters in which [Mancini] clearly had a vested interest." J.A. 721.

## B.  Transportation on Personal Motorcycle

On April 25, 2008, Mancini transported the Veteran off of the Dayton VA premises after-hours on his personal motorcycle. Mancini claims he was taking the Veteran "to look at a motorcycle to educate her on budgeting skills and try to talk her out of buying the motorcycle." Pet'r's Br. 6. Mancini's use of his motorcycle to transport the Veteran became the basis for the second specification supporting the charge of Inappropriate Conduct.

### *Using Government Computer to Transmit Inappropriate Materials*

During the investigation of some of the foregoing allegations, an examination of the files in Mancini's computer was conducted. The investigation discovered that Mancini had forwarded two emails to his wife and daughter. One email contained a pornographic image of a naked woman bending over and another email contained a racial joke. These emails provided the basis for a charge, Using Government Computer to Transmit Inappropriate Materials. This charge included two specifications relating to the two emails Mancini forwarded to his wife and daughter.

On October 23, 2008, the Dayton VA issued Mancini a notice proposing his removal based on the four charges of misconduct: (1) Inappropriate Conduct; (2) Neglect of

Duty; (3) Using Government Computer to Transmit Inappropriate Materials; and (4) Providing Inconsistent Statements Under Oath. Mancini provided an oral response to the charges.

In December of 2008, the agency sustained the charges and removed Mancini. On January 14, 2009, Mancini appealed his removal to the MSPB. An Administrative Judge ("AJ") issued an Initial Decision sustaining all four of the charges, as well as the penalty of removal, on May 1, 2009. *Mancini v. Dep't of Veterans Affairs*, No. CH-0752-09-0272-I-1 (M.S.P.B. May 1, 2009) ("*Initial Decision*"). Mancini filed a petition for review with the full Board, which was denied, making the initial decision of the AJ the final decision of the Board. Mancini timely appealed to this court, and we have jurisdiction over his appeal pursuant to 28 U.S.C. § 1295(a)(9).

## II DISCUSSION

Our review of an MSPB decision is limited. We must sustain a decision of the Board unless it is "found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; [or] (3) unsupported by substantial evidence." *Jacobs v. Dep't of Justice*, 35 F.3d 1543, 1545 (Fed. Cir. 1994) (citing 5 U.S.C. § 7703(c)).

### A  Neglect of Duty and Inappropriate Conduct

With respect to two of the specifications, we agree with Mancini that the decision of the Board is not supported by substantial evidence. First, the Board's decision with respect to the allegation that Mancini improperly supervised the Intern, which is the second

specification of the Neglect of Duty charge, is plainly based on a misapprehension of the record. Mancini points out that the Board mistakenly concluded that the rape of the Veteran was committed by the Intern, whereas the rape was actually committed by a third person, Mr. K. The Board's error on this point appears to have contributed to its decision to sustain this specification. *See Initial Decision*, slip op. at 6 ("[T]he appellant's actions resulted in harm to [the Veteran]. She pursued complaints about the intern's actions based on her belief she was 'basically raped' . . . . I therefore find that disciplinary action based on this specification was warranted . . . .").

Second, the Board's decision with respect to the allegation that Mancini provided his daughter's contact information to the Veteran in violation of the CPERC, the first specification of the Inappropriate Conduct charge, is not supported by substantial evidence. The Board concluded that Mancini had violated the CPERC by providing his daughter's telephone number to the Veteran because it was reasonably foreseeable that his daughter would become involved as the Veteran's advocate on issues over which he had a "vested interest." We see no basis in the record for this conclusion. The Board's decision on this specification again confuses the Intern and Mr. K. Mancini's daughter's advocacy efforts related primarily to the alleged rape by Mr. K, over which Mancini had no vested interest. At the time the daughter's name was provided, the rape by Mr. K had not even occurred, and there is no basis for believing that the Veteran would even require the services of an advocate. While we conclude that these two specifications are not sustainable, as we now discuss, we conclude that Mancini's challenges to the other charges and specifications are without merit.

With regard to the remaining Neglect of Duty and Inappropriate Conduct specifications, Mancini's primary argument is that the MSPB erred by relying on the testimony of the agency's witnesses in finding the specifications of these two charges supported by substantial evidence. The MSPB found the testimony of the agency's witnesses more persuasive than that of Mancini. We have often held that when the MSPB's credibility determinations are not inherently improbable or discredited by undisputed fact, we are not in a position to re-evaluate them. *See Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1149 (Fed. Cir. 1997); *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986); *DeSarno v. Dep't of Commerce*, 761 F.2d 657, 661 (Fed. Cir. 1985); *Griessenauer v. Dep't of Energy*, 754 F.2d 361, 364 (Fed. Cir. 1985). We find nothing in the record here to justify reconsidering the Board's credibility determinations. The first specification of the Neglect of Duty charge, which concerned Mancini's failure to transfer the Veteran to a female vocational rehabilitation specialist, and the second specification of the Inappropriate Conduct charge, which concerned the transportation of the Veteran on Mancini's personal motorcycle, are supported by substantial evidence. Since each charge is supported by a specification that we have sustained, we conclude that all of the charges must be sustained.

## B  Using Government Computer to Transmit Inappropriate Materials

The third charge, Using Government Computer to Transmit Inappropriate Materials, relates to the emails containing sexual and racial innuendos that Mancini sent to his wife and daughter. Mancini explains that "[t]his is not a situation where [he] was regularly emailing inappropriate materials to mass number of recipients. [He]

forwarded emails on two occasions to immediate family members merely to show what he was receiving at work." Pet'r's Br. 20-21.  To remove Mancini from federal service on the basis of these emails, the VA was required to prove, among other things, that "a relationship [was present] between the misconduct and the objective of promoting the efficiency of the service." *See James v. Dale*, 355 F.3d 1375, 1378 (Fed. Cir. 2004).  Mancini asserts that the MSPB failed to specify how a nexus existed between his conduct in forwarding these emails and the efficiency of the Dayton VA.  He claims that the MSPB "merely parroted the 'efficiency of the service' language without supporting facts."  Pet'r's Reply Br. 11. We disagree.

The MSPB described Mancini's conduct and the contents of the emails in detail.  The MSPB then discussed how the VA Handbook, Part IX, provides that government property may only be used for officially-approved purposes.  The MSPB explained that "use of the [government] computer to forward messages containing sexual or racial innuendos is not appropriate, even assuming the messages were only forwarded to the appellant's wife and daughter. . . .  Because improper use of government property harms the efficiency of the service, the charge is sustained." *Initial Decision*, slip op. at 9.  We see no error in the MSPB's finding.  It is self-evident that using government resources to send racially and sexually charged emails is inappropriate; such conduct is a misuse of public funds and reflects poorly on the agency.

### C  Providing Inconsistent Statements Under Oath

The fourth charge against Mancini is that he provided inconsistent statements under oath.  When he was questioned on March 21, 2008, Mancini testified that the

Intern had informed him that the Intern was developing a friendship with the Veteran. While giving sworn testimony on April 11, 2008, however, Mancini claimed that the Intern had "never" told him that "a friendship or relationship" was developing with the Veteran. J.A. 635. Contrary to Mancini's assertions, we agree with the MSPB that his statements were inconsistent. There is also no merit to Mancini's contention that he could not be disciplined for making inconsistent statements. We therefore sustain the Board's decision as to this charge.

## D Reasonableness of Penalty

Finally, Mancini challenges the Board's determination that removal was an appropriate penalty. Mancini argues that the MSPB erred in failing to consider all of the relevant factors pursuant to Douglas v. Veterans Administration, 5 M.S.P.R. 280 (1981), which provides a list of twelve factors that should be considered in determining the appropriateness of a penalty. The Board, however, is not required to "consider every one of the 12 Douglas factors 'mechanistically by [a] preordained formula.'" Webster v. Dep't of Army, 911 F.2d 679, 686 (Fed. Cir. 1990) (quoting Douglas, 5 M.S.P.R. at 306). The deciding official here, whose determinations were adopted by the MSPB, expressly considered all of the Douglas factors. Because we uphold the Board's decision with respect to each of the charges against Mancini and because the Board did not err in finding that removal was not an inappropriate sanction, we sustain the Board's decision as to penalty. Our decision setting aside the Board's decision as to the two specifications does not affect the penalty since there is no indication that the agency would have reached a different result absent those two specifications.

**AFFIRMED**

Costs

No costs.