NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HORACE LEE WILSON,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2015-3077

---

Petition for review of the Merit Systems Protection Board in No. AT-0752-13-0551-I-1.

---

Decided: August 11, 2015

---

HORACE LEE WILSON, Madison, AL, pro se.

CHRISTOPHER KEITH WIMBUSH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., PATRICIA M. MCCARTHY.

---

Before CHEN, LINN, and HUGHES, *Circuit Judges.*

PER CURIAM.

Petitioner Horace Lee Wilson (Mr. Wilson) appeals from a final order of the Merit Systems Protection Board (Board) that sustained Mr. Wilson's removal from his position as an administrative assistant with Headquarters U.S. Army Material Command (AMC), Office of Equal Employment Opportunity (EEO), Redstone Arsenal, Alabama. **[JA 8]** *Wilson v. Dep't of the Army*, No. AT-0752-13-055-I-1 (MSPB Dec. 4, 2014) (*Final Order*). Because substantial evidence supports the Board's decision, we affirm.

## BACKGROUND

In his position at the EEO, Mr. Wilson was the EEO Office's timekeeper and helped manage the Workforce Recruitment Program (WRP), a program designed to provide job opportunities for students with disabilities. In 2012, the AMC Chief of Staff appointed an investigating officer to investigate alleged time card fraud and abuse among certain EEO employees. After examining entrance turnstile records, sent emails, requests for leave, time submitted to the timekeeping system, and a Government-provided laptop, the investigating officer submitted a report detailing her findings. The report concluded that Mr. Wilson had committed time card fraud or abuse, improperly used Government resources for personal benefit, engaged in unprofessional misconduct, misused a Government common access card, and was derelict in his duties. As a result of this investigation and one additional investigation, the Chief of Staff proposed to remove Mr. Wilson on the charge of conduct unbecoming of a Federal employee, alleging eight separate grounds. After considering the evidence, the Chief of Staff found that seven of the grounds were supported by a preponderance of the evidence and concluded that removal was appropriate. At the same time, the Chief of Staff offered Mr. Wilson the option of remaining employed at a reduced grade in a

position outside of the EEO office. Mr. Wilson rejected this offer. He was thereafter removed from his position and he filed a complaint with the MSPB.

In its initial decision, the administrative judge (AJ) concluded that the agency had carried its burden of proof on six of the seven grounds. In the Final Order, the full Board expressed concern about the AJ's credibility determinations on the first three allegations. The Board determined, however, that the AJ correctly found that the remaining three allegations were supported by a preponderance of the evidence, i.e., that Mr. Wilson: (1) committed time card abuse or fraud; (2) used Government resources to perform duties associated with his private business; and (3) failed to follow instructions or cooperate with the acting director of the EEO office. The Board further found these three bases sufficient to sustain Mr. Wilson's removal. Accordingly, the Board explained that it was unnecessary to decide whether to overturn the AJ's findings on the first three allegations.

Mr. Wilson timely appealed the Board's Final Order. On appeal, Mr. Wilson appears to assert three general categories of objections to the Board's Final Order. First, he argues that the Board failed to consider the entirety of the evidence in the record. Second, he argues that the Board erred in accepting the AJ's credibility determinations on the three sustained allegations. Finally, he asserts that he was treated unfairly during the initial investigation and that the Board should have considered this treatment in reaching its final decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of Board decisions is defined narrowly and limited by statute. We must affirm a Board decision unless it is (1) arbitrary or capricious or not in accordance with law, (2) obtained without procedures required by law, rule, or regulation having been followed, or (3) un-

supported by substantial evidence.  5 U.S.C. § 7703(c)(1)–
(3); *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed.
Cir. 1984).  Under the substantial evidence standard, we
must affirm the Board's decision if the record contains
"such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."  *Consol.
Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However,
"[t]he evaluation of witness credibility is a matter within
the discretion of the AJ and is virtually unreviewable."
*Frey v. Dep't of Labor*, 359 F.3d 1355, 1361 (Fed. Cir.
2004).

Before the Board will sustain an agency's decision to
discharge an employee, the agency must establish by
preponderant evidence that (1) the charged conduct
occurred; (2) there is a "relationship between the miscon-
duct and the objective of promoting the efficiency of the
service"; and (3) that the penalty imposed is reasonable.
*James v. Dale*, 355 F.3d 1375, 1378 (Fed. Cir. 1985).  Mr.
Wilson does not appear to challenge the Board's conclu-
sion that a nexus existed between his misconduct and the
objective of promoting the efficiency of the service.

I

The Board's decision sustaining the removal rested on
its finding that a preponderance of the evidence supported
three grounds for the "conduct unbecoming" charge.  On
appeal, Mr. Wilson asserts that evidence in the record
supports reversal of the Board's conclusion.  Because
substantial evidence supports the Board's conclusion,
however, we must affirm the Board's finding.

Mr. Wilson first asserts that the Board failed to con-
sider evidence demonstrating that he did not commit time
card abuse.  He points to his statements that he often
performed his duties off-site and that his immediate
supervisor authorized his off-site work.  He also argues
that on many occasions, the security turnstiles that
monitored whether he entered the building were not

working. Mr. Wilson presented these arguments to the AJ and the Board. The Board also considered Army's evidence that Mr. Wilson "did not enter the building at all on 10 days and arrived late on 67 days without adequate leave coverage." *Final Order* at 6. In addition, the Board credited the testimony of "several coworkers" who "attested that the appellant often arrived late, left early, took extended lunches, or was otherwise unaccounted for during the day." *Id.* The AJ found Mr. Wilson's statements less persuasive than the testimony of his coworkers, noting that Mr. Wilson was unable to account for any of his movements during these absences, and in favor of testimony that at least one turnstile was operational at all times and that security personnel would not routinely allow employees to circumvent security protocols.

Mr. Wilson also argues that his personal use of his Government computer was *de minimis*. Both the AJ and the Board considered the Army's evidence that over half of the emails that Mr. Wilson sent between April 21, 2012, and August 31, 2012, were unrelated to official work duties. In August alone, seventy of the eighty-nine emails were unrelated to work duties. The Board further considered Mr. Wilson's decision to engage in an interview with a local newspaper during his duty hours to promote his private business. Because of the vast quantity of non-work related use, the AJ and the Board therefore rejected Mr. Wilson's *de minimis* argument.

Finally, Mr. Wilson contends that the Board should not have credited the testimony of the acting EEO officer to find that Mr. Wilson failed to follow instructions and cooperate with a supervisor. But such credibility determinations are "virtually unreviewable." Moreover, the Board's conclusion was also supported by documentary evidence, including emails that Mr. Wilson sent to the acting EEO officer that reveal disrespectful and hostile behavior towards his superior.

Based on the Board's findings and our limited ability to review credibility determinations, we find Mr. Wilson's arguments unpersuasive. The Board's decision that the charged conduct occurred is supported by substantial evidence.

## II

The determination of an appropriate employment penalty is a matter committed primarily to the discretion of the employer and can be reversed only for an abuse of discretion. *See Lachance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999). The penalty must be reasonable in light of the sustained charges, and we have "effectively defined reasonable in this context to mean merely that the agency's choice of penalty not be grossly disproportionate to the offense." *Webster v. Dep't of Army*, 911 F.2d 679, 685 (Fed. Cir. 1990) (internal quotations omitted).

The Board found that Mr. Wilson's removal was reasonable given the serious nature of the charged conduct and its direct relation to his primary work duties. His disregard for his obligation to staff his duty position was even more concerning because he was the EEO Office's timekeeper. The Board therefore reasonably found that this misconduct "went to the very core of his responsibilities of a federal employee" and called into question "his reliability, veracity, trustworthiness, and willingness to ethically perform his duties." *Final Order* at 11. With respect to his use of Government resources for personal business, the Board found that Mr. Wilson "violat[ed] the trust the agency has placed in him and destroy[ed] the confidence established in the employer-employee relationship." *Id.* The Board further determined that his behavior towards his superior "undermin[ed] management's capacity to maintain employee efficiency and discipline." *Id.* at 11–12. At bottom, because Mr. Wilson's use of government time and resources was known to his coworkers and was reported in a local newspaper, the Board

reasonably concluded that his behavior could undermine other employees' confidence in the EEO Office and damage the public's confidence in the Government as a whole.

Finally, the Board considered Mr. Wilson's seventeen years of service as a mitigating factor, but found that it could not cure the damage caused by his misconduct.

For these reasons, the Board concluded that the penalty was reasonable. Thus, to the extent that Mr. Wilson's arguments can be construed as urging us to find that his penalty is too severe, we disagree. The Army's chosen penalty is not "grossly disproportionate to the offense" and therefore the Army did not abuse its discretion when it decided to discharge Mr. Wilson.

COSTS

No Costs.

**AFFIRMED**