**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| BYRON HOLLISTER,<br>                    Appellant, | DOCKET NUMBER<br>DE-0752-14-0040-I-2 |
|                    v. | |
| DEPARTMENT OF JUSTICE,<br>                    Agency. | DATE: September 1, 2022 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Lawrence A. Berger, Esquire, Glen Cove, New York, for the appellant.

Susan E. Gibson, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which affirmed his removal from Federal service. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2    The appellant was a GS-1811-13 Supervisory Deputy U.S. Marshal (DUSM) in the U.S. Marshal's Service (USMS) in the District of New Mexico. Effective September 27, 2013, the agency removed him from his position based on multiple charges of misconduct. *Hollister v. Department of Justice*, MSPB Docket No. DE-0752-14-0040-I-1, Initial Appeal File (IAF), Tab 8 at 14-30, Tab 9 at 4-40. The appellant contended that the action constituted reprisal for whistleblowing. IAF, Tab 26, Tab 28 at 23-29, Tab 30.

¶3    After a 4-day hearing, the administrative judge issued an initial decision in which he sustained all charges (and all specifications but one), found nexus, and found that the removal penalty was within the tolerable bounds of reasonableness. *Hollister v. Department of Justice*, MSPB Docket No. DE-0752-14-0040-I-2, Appeal File (I-2 AF), Tab 13, Initial Decision (ID) at 16-35, 42-46. He further found that the appellant proved that he made a protected disclosure that was a contributing factor to a personnel action but that the agency showed by clear and convincing evidence that it would have removed the appellant absent any whistleblowing. *Id.* at 35-42.

¶4    On review, the appellant asserts that none of the charges should be sustained and that the agency's evidence was insufficient to meet the clear and convincing evidence test.  His arguments concerning the charges are taken virtually verbatim from his closing argument.  *Compare* PFR File, Tab 2, *with* I-2 AF, Tab 7.  He does not identify any particular flaws in the administrative judge's reasoning or any evidence contradicting the administrative judge's findings; he merely resubmits the same arguments that failed to persuade the administrative judge below.  In finding that the agency proved its charges and the appellant failed to prove that the removal constituted reprisal for whistleblowing, the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility.  Under the circumstances, we see no reason to disturb those findings.  *See, e.g.*, *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997).  Nevertheless, we find it appropriate to summarize the administrative judge's findings concerning the charges.

**ANALYSIS**

Charge 1:  Providing False, Misleading, or Inaccurate Information

¶5    The administrative judge did not sustain specification 3, ID at 22, and the agency does not contest the administrative judge's finding.  Regarding specifications 1 and 2, the agency asserted that the appellant submitted two Standard Form (SF) 86s in 2002 and 2011 in which he failed to disclose that he was employed as a general contractor in the residential building industry.  IAF, Tab 9 at 5-9, Tab 10 at 40, 64, Tab 11a at 91.  The agency cited, among other documentary evidence, his statement to the Office of Personnel Management (OPM) background investigator, IAF, Tab 11 at 143-72; numerous business documents relating to his company, IAF, Tab 13 at 5-93, Tab 14 at 4-58; letters regarding Department of Veterans Affairs (VA) loans and a bank loan, IAF, Tab 13 at 7, 15; a letter requesting a zoning variance, *id.* at 75; a document

requesting approval to engage in outside employment when he worked at the Las Cruces Police Department, IAF, Tab 11 at 139; various invoices, IAF, Tab 13 at 21, 30, Tab 14, Tab 22; and an email conversation with a potential client, IAF, Tab 14 at 44-48.

¶6    To prove a charge of falsification, misrepresentation, or lying, the agency must show by preponderant evidence that the appellant supplied incorrect information and knowingly did so with the intention of defrauding, deceiving, or misleading the agency for his own private material gain. *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶ 11 (2016). The appellant contended that he lacked the requisite intent because he was a passive partner in the business. The administrative judge rejected this claim as false and found it implausible that the appellant would refer to himself as a builder, use his name on the business's checks and contracts, use his address when registering the business with the state, and make over 500 telephone calls on his Government telephone to people involved in the business if he was merely passively loaning his license for other people to use. ID at 19-20. The administrative judge found that the appellant actively participated in the business, and there was no record that his wife and brother took over the business, as the appellant had alleged. ID at 18-21.

¶7    The appellant also alleged that he had a good-faith belief that his activities did not constitute "employment" because "employment," to him, means one is an "employee," and he did not consider himself as such. I-2 AF, Tab 7 at 25-26; PFR File, Tab 2 at 17-18. He contended that his mistaken understanding of what "employment" meant to the agency is insufficient to show intent. I-2 AF, Tab 7 at 29. The appellant relies on a dictionary[2] definition of the word "employment,"

---

[2]    Other dictionaries define "employment" in a way that encompasses the concept of work in general. *Black's Law Dictionary* 471 (5th ed. 1979) ("Employment" means the "[a]ct of employing or state of being employed; that which engages and occupies, that which consumes time or attention; also an occupation, profession, trade, post, or business . . . . Activity in which a person engages or is employed; normally, on a day-to-day basis.").

but the most relevant definition is contained in the agency's policy on outside employment. IAF, Tab 37a at 14-21. The agency defines "outside employment" as "[a]ny non-federal activity performed for a source (including self-employment) other than the [agency] or another federal government agency involving an employee's efforts, services, or time for compensation." *Id.* at 19. The appellant's interpretation of "employment" is self-serving, contrary to the commonly understood meaning of the term, and contrary to the agency's definition of the term.

¶8        Intent to deceive can be inferred when a representation is made with reckless disregard for the truth, or the totality of the circumstances supports a finding of intent to deceive. *Prather v. Department of Justice*, 117 M.S.P.R. 137, ¶ 23 (2011). Here, the appellant's allegations are inconsistent with the bulk of the documentary evidence, which was largely obtained from his workspace, and reflect a desire to conceal the truth. In addition, although he sought approval for his activities and/or advice from agency ethics counsel and a former supervisor, their positive responses were based on the incomplete and incorrect information that the appellant provided. It appears that the appellant knew, or strongly suspected, that he would not get a favorable answer to his ethics questions if he told them the truth. As the administrative judge correctly found, the reasonable inference to be made from the appellant's false statements is that he did not want to give up his business or the money flowing from it and he did not want to be disciplined. ID at 21. This is sufficient to establish that the appellant acted for personal gain. *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶ 13 (2014) (explaining that "personal gain" in the context of a falsification charge can mean financial gain, to avoid discipline, or to secure employment).

¶9        The agency specified that the appellant committed four additional misrepresentations about his outside employment, one to an OPM investigator when he failed to disclose his outside employment, and three instances in which he stated that his wife and brother had taken over the business (once in

conversation with his then supervisor and twice on an Office of Government Ethics Form 450). IAF, Tab 9 at 10-15. The agency relied on the same evidence as it had for the first three specifications to show that the appellant was actively engaged in the building business, he received compensation for his services, and he had not turned over managing the business to family members as he had claimed. *Id.* The administrative judge likewise sustained these four specifications for the same reasons he sustained the first two specification, ID at 23-24, the appellant's arguments below and on review are the same, I-2 AF, Tab 7 at 29-31; PFR File, Tab 1 at 20-21, and we find that the initial decision is correct for the reasons noted above.

Charge 2: Violation of USMS Policy: You violated USMS policy when, while employed as a USMS criminal investigator in the GS-1811 job series and receiving law enforcement availability pay, you maintained compensated, outside employment

¶10 Agency Criminal Investigators in classification series 1811 who receive law enforcement availability pay must make themselves "available on a '24/7' basis." IAF, Tab 9 at 16. Accordingly, USMS Directive 1.2(D)(4)(a) prohibits these employees from engaging in outside employment. *Id.* The appellant contended that he was not engaged in outside employment with the same unpersuasive arguments he used to defend himself against the first charge. I-2 AF, Tab 7 at 31-34; PFR File, Tab 2 at 21-23. As the administrative judge correctly found, the appellant's employment as a builder therefore violated the agency's policy, and he correctly sustained the charge. ID at 24-26.

Charge 3: Association with Person Connected to Criminal Activities

¶11 The agency alleged that the appellant had an improper association with "M," who performed jobs in the appellant's business. IAF, Tab 9 at 21. M had multiple felony drug convictions. *Id.* at 22. On December 29, 2005, Code Enforcement Officer "R" of the Las Cruces Police Department attempted to issue M multiple building permit violations. *Id.* at 21. M contacted the appellant, and

the appellant arrived displaying his badge and weapon, and he attempted to persuade Officer R to issue a verbal warning to M rather than several citations. March 20, 2014 Hearing Transcript (HT 1) at 208-12 (testimony of Officer R);[3] IAF, Tab 9 at 21-22, Tab 17 at 34-35.

¶12    The appellant argued that he knew M from playing baseball, and he believed that M was a landscaper who worked for his wife's building business. I-2 AF, Tab 7 at 35; PFR File, Tab 2 at 23.  He claimed that he was unaware of M's criminal history.  I-2 AF, Tab 7 at 35-36; PFR File, Tab 2 at 24.  He also admits that he had the encounter with M and Officer R and states that M wrongly believed that the appellant could fix his citations.  I-2 AF, Tab 7 at 35; PFR File, Tab 2 at 23-24.  The administrative judge found, however, that the agency was not required to show that the appellant *knew* M was a felon, merely that a disinterested observer with knowledge of the essential facts known to or readily ascertained by the appellant would reasonably conclude that M was a felon.  ID at 26 (citing *James v. Dale*, 355 F.3d 1375, 1379 (Fed. Cir. 2004)).  The administrative judge found that Officer R's testimony concerning his encounter with the appellant was credible and the appellant's (based on demeanor) was not. ID at 27.  The administrative judge further found that the appellant had known M socially and professionally for years, intervened on his behalf in a local law enforcement matter (including helping get M to the courthouse), and therefore knew or should have known that M was a felon.  ID at 27-28.  The appellant attempts on review to downplay his years-long connection with M and states that he could not have reasonably known that M was a felon, but he identifies no

---

[3] In fact, Officer R testified that the appellant told him, "I'll handle this.  I'll take care of this.  He works for me now.  If you want to go ahead and issue those citations that you have, the remaining, I'll take care of it.  He's working for me."  HT 1 at 213 (testimony of Officer R).  That the appellant acknowledged M as an employee undercuts his current assertion that he does not run the business.  *See* April 28, 2014 Hearing Transcript at 106 ("He may have been a contractor worker but never an employee of mine.") (testimony of the appellant).

evidence on this point that the administrative judge failed to discuss, and he offers no reason to set aside the administrative judge's credibility findings. *Haebe v. Department of Justice*, [288 F.3d 1288](), 1301 (Fed. Cir. 2002) (holding that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so).

Charge 4:  Misuse of a Government-Owned Vehicle (GOV)

¶13        The agency contended that the appellant misused his GOV when, on five occasions, he drove the GOV with no official reason for doing so.  IAF, Tab 9 at 23-28.  The appellant alleged that he was on call all the time so he frequently drove the GOV off duty so as to make himself available if needed.  I-2 AF, Tab 7 at 36; PFR File, Tab 2 at 25.  He further argued that he had a reasonable belief that his use of the GOV while off duty was officially sanctioned because he allegedly had received authorization from a prior supervisor to use it off duty. I-2 AF, Tab 7 at 36-37; PFR File, Tab 2 at 25.

¶14        Both the pertinent agency policy and the local policy provide that a GOV is for official government business only.  IAF, Tab 18 at 38, Tab 29 at 58.  The agency-wide GOV policy permits series 1811 employees, with appropriate authorization, home-to-work (HTW) use of the GOV "to allow for 24-hour immediate response."  IAF, Tab 29 at 57.  The policy is ambiguous as to whether HTW drivers may make the minor deviations from their commutes for personal reasons that are allowed when the employee is on duty.  *Compare* IAF, Tab 29 at 58, ¶ D(2)(c), *with id.*, ¶ D(2)(d).  Assuming that minor deviations are permitted, the policy is very clear that "[o]nce the employee arrives at his/her residence, the employee may not use the GOV to conduct any personal business." *Id.*, ¶ D(2)(e).  There is nothing in either policy to suggest that HTW employees should drive or are permitted to drive their GOVs off duty for personal reasons so that they are instantly available if they are called back to duty.  There also is no

evidence to support the appellant's contention that his former supervisor authorized him to use the vehicle off duty, and the supervisor denied doing so. The administrative judge found it implausible that the appellant obtained the authorization he claimed, particularly because the authorization would have been contrary to agency policy. ID at 29. The administrative judge thus correctly sustained charge 4.

Charge 5: Conduct Unbecoming a DUSM

¶15 The agency alleged that the appellant engaged in conduct unbecoming a DUSM when he facilitated his business by using Government resources (duty time, computer, email account, cell phone, fax machine, and GOV). IAF, Tab 9 at 29. The agency relied on the same instances of misuse of his GOV and the same documents found on the appellant's Government computer that it used to support the earlier charges. *Id.* at 29-30. In addition, the agency submitted evidence showing that many of the documents had been created during duty time and that the appellant made or received more than 500 calls related to his business in a 6-month period. *Id.*

¶16 The appellant contended that his use of Government time and resources to run his business was de minimis and amounted to permitted minor personal use allowed by agency policy. I-2 AF, Tab 7 at 37-38; PFR File, Tab 2 at 25-26. The administrative judge correctly found that the number of telephone calls, among other things, showed that the appellant's misconduct was more than a negligible use of Government resources. ID at 31-32. We agree.

Charge 6: Displaying Poor Judgment

¶17 The agency brought two specifications under this charge. The first involved the appellant's financial relationship with a subordinate employee. The appellant sold a house to the subordinate and financed a portion of the purchase price by offering an interest-free mortgage. IAF, Tab 9 at 31-33. In other words, he entered into a contractual relationship in which he was his employee's creditor.

¶18    The appellant contended that the agency was required to prove that his actions violated the Office of Government Ethics regulation at 5 C.F.R. § 2635.402, which was inapplicable to this type of transaction.  I-2 AF, Tab 7 at 38; PFR File, Tab 2 at 26.  The appellant may be correct in his interpretation of the regulation, but that is immaterial because the agency did not charge him with violating that regulation.  The agency's mere mentioning of the regulation several paragraphs into its discussion section of this specification in the proposal letter does not elevate the regulation to an element of the charge.  In any event, the administrative judge correctly found that, regardless of the circumstances, the transactions created either a conflict of interest or the appearance of a conflict of interest and constituted very poor judgment.  ID at 32-33.

¶19    The second specification concerns the appellant's intervention in the incident between M and Officer R.  IAF, Tab 9 at 30-31.  For the reasons stated above under charge 3, the administrative judge sustained this specification.  In doing so, he credited Officer R's testimony over the appellant's testimony.  The appellant disagrees with the administrative judge's assessment, but he has not presented sufficiently sound reasons for disturbing the discretion afforded to administrative judges' credibility determinations.  *Haebe*, 288 F.3d at 1301.

Charge 7:  Misuse of Position

¶20    The agency alleged that the appellant induced a subordinate employee, "O," to serve process for his business partner on the partner's wife in a divorce case.  IAF, Tab 9 at 34-35.  The appellant asserted that he merely passed along O's telephone number and did nothing that could constitute "inducement."  I-2 AF, Tab 7 at 38-39; PFR File, Tab 2 at 27-28.  However, O testified that the appellant asked him to serve process.  HT 1 at 55 (testimony of O).  The administrative judge credited the testimony of O over the appellant's testimony and found that the agency demonstrated that the appellant asked a subordinate to serve process.  ID at 35.  The administrative judge further found that agency policy prohibits employees from engaging in outside employment that involves serving process,

whether paid or not. IAF, Tab 37 at 15. By repeating the same argument he made below and not raising any particular challenge to the administrative judge's findings, the appellant has not identified any basis on which to disturb the initial decision. Moreover, as noted above, the appellant has not proffered a sufficiently sound reason for the Board to intrude upon the deference afforded to administrative judges' credibility determinations. *Haebe*, 288 F.3d at 1301.

Whistleblower Reprisal: Clear and Convincing Evidence Test

¶21 The administrative judge found, and the parties do not dispute, that the appellant proved by preponderant evidence that he made a protected disclosure when he disclosed that an Assistant Chief DUSM (the appellant's first-line supervisor) instructed his subordinate supervisors not to issue any "Outstanding" ratings to their employees, an instruction the Assistant Chief DUSM attributed to the Chief USM (the appellant's second-line supervisor). The administrative judge also found that the appellant's disclosure was a contributing factor in a personnel action taken against him. The issue before the Board, therefore, is whether the agency has shown by clear and convincing evidence that it would have removed the appellant even absent any protected activity.

¶22 In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

*Carr Factor 1:  Strength of Evidence*

¶23    The appellant contends that the evidence against him is weak because, in his view, none of the charges against him should be sustained.  The administrative judge, however, rejected the appellant's arguments concerning the merits of the appeal and found that the agency's case was "robust."  ID at 41.  We agree with the administrative judge.  The appellant concealed his outside employment for years.  Aside from his false statements, the administrative judge correctly found that the appellant had a number of opportunities to confess, so to speak, and he failed to avail himself of any of those opportunities but instead continued to repeat the lie.  Even the purportedly exculpatory evidence that the appellant proffered was either not relevant or tended to support the agency's case.  This first *Carr* factor weighs heavily in the agency's favor.

*Carr Factor 2:  Retaliatory Motive*

¶24    The administrative judge found that there was no evidence of retaliatory motive on the part of either the proposing or the deciding official.  ID at 41.  The appellant contends that the Chief DUSM had motive to retaliate and that his motive should be imputed to the proposing and deciding officials.  PFR File, Tab 2 at 8-9.  His argument is not persuasive.

¶25    First, there is little evidence that the Chief DUSM had a retaliatory motive.  When the Chief DUSM learned independently of the appellant's disclosures about the Assistant Chief DUSM's instructions not to issue "Outstanding" ratings, he took swift action to reassign the Assistant Chief DUSM to a nonsupervisory position.  May 13, 2014 Hearing Transcript (HT 4) at 71-76 (testimony of the Chief DUSM).  He also had his subordinate supervisors adjust employee ratings to the extent they had been given lower ratings than their performance warranted, and he personally adjusted upwards the ratings of some of the Assistant Chief DUSM's direct reports. *Id.* at 77-79.  Because the Chief DUSM independently determined that the Assistant Chief DUSM's actions were wrong and took immediate steps to correct the situation, it makes little sense that he would harbor

a retaliatory motive against the appellant for reporting that the Assistant Chief DUSM's actions were wrong. In any event, to the extent the Chief DUSM may have harbored retaliatory animus against the appellant because of possible concerns that the conduct that the appellant disclosed reflected badly on the agency, we find that any such motive was slight. *See, e.g.*, *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019) (finding that the Board's administrative judge erred by failing to consider whether the deciding official had a "professional retaliatory motive" against the appellant because his disclosures "implicated the capabilities, performance, and veracity of [agency] managers and employees and implied that the [agency] deceived [a] Senate Committee").

¶26 Even if the Chief DUSM did possess retaliatory animus, the particular facts of this case make it unlikely that his motive can be imputed to the deciding official. There is no indication that the investigation was not carried out by neutral investigators in an impartial manner. In addition, a separation existed between the appellant's immediate managers in New Mexico and the deciding official, given that the agency has designated one person, a "Chief Inspector," to be the deciding official in all cases. The deciding official in the appellant's case, the U.S. Marshal for the Southern District of Ohio, testified that she had decided approximately 200 cases. March 21, 2014 Hearing Transcript at 7 (testimony of the deciding official). She also testified as to whom she consulted when deciding the appellant's case, and she explicitly stated that she had no contact with anyone from New Mexico about the matter and made an independent decision based on the documents in the investigative report she received. *Id.* at 8-10. The appellant was unable to refute this testimony.

¶27 The Board will consider claims of retaliation by investigation when the investigation was so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate against an employee for whistleblowing activity. *Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 7

(2007). However, when, as here, the referring official did not specify who was to do the investigation, how it was to be done, or who should be interviewed and took no actions to influence the direction or outcome of the investigation, there was an insufficient basis on which to conclude that the investigation was initiated as a pretext for retaliation.[4] *Marano v. Department of Justice*, 2 F.3d 1137, 1142 n.5 (Fed. Cir. 1993). Thus, we find that any motive to retaliate under *Carr* factor 2 is very slight.

### *Carr Factor 3: Treatment of Similarly Situated Comparators*

¶28      The agency asserted that there were no similarly situated comparators who were not whistleblowers. The appellant contends that he is his own comparator. He asserts that, in 2010, the agency had an opportunity to investigate him and chose not to, but in 2012, after his protected disclosures, the agency chose to investigate him. He asserts that the only difference between 2010 and 2012 is that he blew the whistle after 2010, so the reason for his removal is likely reprisal for whistleblowing.

¶29      In fact, in 2010, the Chief DUSM received a written complaint about the appellant's conduct, which he duly passed along to Internal Affairs. HT 4 at 89-90 (testimony of the Chief DUSM). Aside from providing testimony during the investigation, the Chief DUSM had no involvement with the investigation or any decisions about whether to discipline. *Id.* at 90-91. He testified that he was unaware of the appellant's outside employment until after the 2010 investigation was completed. *Id.*

---

[4] The National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, 131 Stat. 1283 (NDAA for 2018), was signed into law on December 12, 2017. The NDAA for 2018 amended 5 U.S.C. § 1214 to allow the Office of Special Counsel (OSC) to petition the Board for corrective action concerning damages reasonably incurred by an employee due to an agency's investigation of the employee if it was commenced, expanded, or extended in retaliation for protected whistleblowing activity. NDAA for 2018, § 1097(c)(4), 131 Stat. at 1619 (codified at 5 U.S.C. § 1214(i)). Regardless of questions concerning retroactivity, the provision does not apply to the instant appeal because OSC has not petitioned the Board for such relief.

¶30     Thus, while the appellant implies that the Chief DUSM knew about his misconduct all along and did nothing until after the appellant made protected disclosures, the truth is that the Chief DUSM did not know about the appellant's outside employment until after the 2010 investigation was closed. It is simply not true that the Chief DUSM chose not to report the appellant's outside employment in 2010. The fact that the appellant was investigated before he blew the whistle as well as after tends to show that the agency treated him the same way before he made his disclosures and that his example does not show the disparate treatment of whistleblowers. To the extent evidence on *Carr* factor 3 exists, the agency is required to come forward with all reasonably pertinent evidence; the failure to do so may be at the agency's peril. *Whitmore v. Department of Labor*, 680 F.3d1353, 1374 (Fed. Cir. 2012). Absent relevant comparator evidence, *Carr* factor 3 cannot weigh in favor of the Government. *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). Although the agency contends that there is no relevant comparator evidence, we cannot find on this record that *Carr* factor 3 favors the agency.

¶31     We find that the administrative judge considered all of the record evidence both in favor of and detracting from the appellant's claim of reprisal in accordance with *Whitmore*, 680 F.3d at 1367-70, and correctly concluded that the agency would have removed the appellant absent any protected activity. The seriousness of the appellant's misconduct greatly outweighs the very slight evidence of possible retaliatory motive.

Penalty

¶32     When, as here, the Board sustains all of the agency's charges, it will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised its management discretion within the tolerable limits of reasonableness. *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 12 (2014). In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency,

recognizing that the Board's function is not to displace management's responsibility but to ensure that managerial judgment has been properly exercised. *Id.* The Board will modify or mitigate an agency-imposed penalty only when it finds the agency failed to weigh the relevant factors, or the penalty clearly exceeds the bounds of reasonableness. *Id.*

¶33    As the administrative judge correctly found, the deciding official properly considered the aggravating and mitigating factors most relevant to this case and determined that the penalty of removal was appropriate. We see no basis to interfere with the agency's exercise of management judgment here. In particular, the appellant was a supervisory law enforcement officer, and the agency is entitled to hold him to a high standard of conduct. *Wilson v. Department of Veterans Affairs*, 74 M.S.P.R. 65, 69 (1997). The appellant's misconduct was very serious and was exacerbated by his status as a law enforcement officer and as a supervisor. We therefore agree with the administrative judge that the penalty of removal is within the tolerable bounds of reasonableness.

## NOTICE OF APPEAL RIGHTS[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                       /s/ for
                                     _____
                                     Jennifer Everling
                                     Acting Clerk of the Board
Washington, D.C.